890 F.2d 184
 SABLE COMMUNICATIONS OF CALIFORNIA INC.; Carlin
Communications, Inc., Plaintiffs-Appellees,
v.
PACIFIC TELEPHONE AND TELEGRAPH COMPANY, Defendant-Appellant,
and
Public Utilities Commission of the State of California, Defendant,
General Telephone Company of California, Defendant-Intervenor.
SABLE COMMUNICATIONS OF CALIFORNIA INC.; Carlin
Communications, Inc., Plaintiffs-Appellees,
v.
CALIFORNIA PUBLIC UTILITIES COMMISSION, Defendant-Appellant,
and
PACIFIC TELEPHONE AND TELEGRAPH COMPANY, Defendant,
GENERAL TELEPHONE COMPANY OF CALIFORNIA, Defendant-Intervenor.
SABLE COMMUNICATIONS OF CALIFORNIA, INC., et al., Plaintiff- Appellee,
v.
PACIFIC TELEPHONE, et al., Defendant-Appellant.
SABLE COMMUNICATIONS OF CALIFORNIA INC.; CARLIN
COMMUNICATIONS, INC.; PACIFIC BVELL, Pacific Bell,
Plaintiff-Appellees,
v.
PACIFIC TELEPHONE AND TELEGRAPH COMPANY, Defendant,
and
CALIFONIA PUBLIC UTILITIES COMMISSION, Defendant-Appellant.
SABLE COMMUNICATIONS OF CALIFORNIA INC.; CARLIN
COMMUNICATIONS, INC., Plaintiff-Appellees,
v.
PACIFIC TELEPHONE, now known as Pacific Bell, Defendant-Appellant.
SABLE COMMUNICATIONS OF CALIFORNIA, INC.; CARLIN
COMMUNICATIONS, INC., Plaintiffs-Appellees,
v.
PACIFIC TELEPHONE AND TELEGRAPH COMPANY; CALIFORNIA PUBLIC
UTILITIES, Defendants,
and
GENERAL TELEPHONE COMPANY of CALIFORNIA, dba GTE CALIFORNIA,
INC., Defendant-Appellant.
SABLE COMMUNICATIONS OF CALIFORNIA, INC.; CARLIN
COMMUNICATIONS, INC., Plaintiffs-Appellees,
v.
PACIFIC TELEPHONE AND TELEGRAPH COMPANY; GENERAL TELEPHONE
COMPANY of CALIFORNIA, dba CALIFORNIS INC., Defendants,
and
CALIFORNIA PUBLIC UTILITIES COMMISSION, Defendant-Appellant.
 Nos. 88-5586, 88-5596, 88-5798, 88-5819, 88-6065, 88-6127, 88-6130.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 8, 1989.
Decided Nov. 22, 1989.
 
 Bart Kimball and Alan D. Croll, Los Angeles, Cal., for defendant-appellant Pacific Telephone.
 Janice E. Kerr, J. Calvin Simpson, Gretchen T. Dumas, San Francisco, Cal., for defendant-appellant Cal. Public Utilities Com'n.
 Jeffrey A. Maldonado, Thousand Oaks, Cal., for defendant-intervenor-appellant Gen. Telephone.
 Richard K. Simon, Los Angeles, Cal., and Lawrence E. Abelman, New York City, for plaintiffs-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before BROWNING, FARRIS and CANBY, Circuit Judges.
 JAMES R. BROWNING, Circuit Judge:
 
 
 1
 Pacific Telephone ("Pacific Bell"), the California Public Utilities Commission ("CPUC"), and General Telephone appeal from the grant of summary judgment for Sable Communications and Carlin Communications (collectively "Sable") in Sable's 42 U.S.C. Sec. 1983 action challenging CPUC Rule 31, which authorized disconnection of telephone service for Sable's sexually explicit messages under certain conditions. We also review the propriety of the award of attorneys' fees to Sable under 42 U.S.C. Sec. 1988. On the merits, we affirm, except as to the CPUC, which as an arm of the state could not be sued under section 1983. We remand, however, for reallocation of attorneys' fees between Pacific Bell and General Telephone.
 
 I.
 
 2
 In 1983, Pacific Bell instituted an Information Access Service, which allows callers throughout the country to listen to pre-recorded messages for a fee.
 
 
 3
 As part of its regulation of this new service, Pacific Bell established, and the CPUC approved, Tariff 173-T, which required the utility to disconnect service to any business providing "lewd, lascivious, filthy, indecent, or obscene" messages, "upon receipt of an order of a court" directing disconnection. See Pacific Sched.Cal. PUC No. 173-T, Reg. 1(b). General Telephone established an Information Access Service and adopted a tariff nearly identical to Pacific Bell's. See General Sched.Cal. PUC No. A-14, Spec.Cond. 3(b).[1]
 
 
 4
 Earlier, the CPUC had adopted Rule 31, which is the specific subject matter of this case, requiring any communications utility to disconnect service to any customer upon receipt of a finding of probable cause signed by a magistrate that the customer was using the service for illegal activity.[2]
 
 
 5
 Shortly after initiating its sexually explicit message service, Sable received a letter from Pacific Bell threatening to disconnect the service under Tariff 173-T. In response, Sable filed this suit in federal court seeking declaratory and injunctive relief under section 1983. Pacific Bell then sued in state court seeking permission to disconnect Sable under Tariff 173-T. Pacific Bell's suit was removed and consolidated with Sable's federal action. General Telephone subsequently intervened.
 
 
 6
 In September 1984, the CPUC initiated an investigation of the Information Access Service, and the parties stipulated to a stay of this action pending a decision by the CPUC. In January 1987, the CPUC entered an interim order striking the provisions of Tariff 173-T allowing disconnection of service for lewd, lascivious, filthy or indecent messages.[3] The district court then lifted the stay and dismissed Sable's challenge of Tariff 173-T as moot.
 
 
 7
 Shortly thereafter Pacific Bell adopted a written policy of lobbying law enforcement agents to prosecute Sable under state obscenity laws to "clear[ ] the way for a finding by a magistrate that probable cause exists that the telephone is being used for illegal purposes. Under CPUC Rule 31 we would then be required to disconnect the service [to Sable]." 4 C.R. 92, Exh. 2, at 1 (sealed exhibit). Sable responded by moving for summary judgment and requesting an injunction against use of Rule 31 to disconnect its service.
 
 
 8
 The district court granted Sable's motion, holding Rule 31 overbroad and in violation of the first amendment, as applied to Information Access Service communications on the basis of content, and permanently enjoined enforcement of the rule. The court subsequently granted Sable's request for attorneys' fees against all three defendants.
 
 
 9
 Pacific Bell and the CPUC do not argue the merits of the district court's holding that Rule 31 violated the first amendment. Rather they challenge the court's decision on several procedural grounds: that Sable presented no justiciable case or controversy; that Sable failed to establish that defendants acted under color of state law; that the district court should have abstained; and that the eleventh amendment barred Sable's claim against the CPUC.[4] They also contend the court erred in awarding attorneys' fees to Sable. General Telephone appeals only the grant of attorneys' fees.
 
 II.
 
 10
 Pacific Bell and the CPUC contend there is no "case or controversy" because Rule 31 has not been enforced against Sable and the threat of enforcement is not sufficiently real or immediate to "present a real and substantial controversy which unequivocally calls for adjudication of the rights claimed in advance of any attempt by the State to curtail them." Poe v. Ullman, 367 U.S. 497, 509, 81 S.Ct. 1752, 1759, 6 L.Ed.2d 989 (1961) (Brennan, J., concurring in the judgment); see Western Mining Council v. Watt, 643 F.2d 618, 628 (9th Cir.1981).[5]
 
 
 11
 A threat that emanates from a regulation, compulsory in nature, to which the plaintiff is currently subject, is real and immediate if the possibility of enforcement is more than hypothetical. Sable Communications v. FCC, 827 F.2d 640, 643 (9th Cir.1987) (Sable I ). Rule 31 compels Sable to conform the content of its sexually explicit messages to an allegedly unconstitutional standard if Sable wishes its business to survive. Such a prior coercive restraint presents so palpable a threat to first amendment rights that it creates a case or controversy regardless of "the pre-enforcement nature of this suit," at least where there is "an actual and well-founded fear that the law will be enforced." Virginia v. American Booksellers Ass'n, 484 U.S. 383, 108 S.Ct. 636, 642, 98 L.Ed.2d 782 (1988); see Ripplinger v. Collins, 868 F.2d 1043, 1047 (9th Cir.1989).
 
 
 12
 Such an actual and well-founded fear of enforcement exists. As mentioned earlier, Pacific Bell has taken concrete steps to initiate the process under Rule 31, which, if completed, would result in disconnecting Sable's service. In 1987, Pacific Bell announced a written policy that included "[t]he filing of petitions to the District Attorneys for the cities and counties of Los Angeles, San Diego, San Francisco and Sacramento calling for their enforcement of section 311.2 of the California Penal Code" so that "[u]nder CPUC Rule 31 we would then be required to disconnect the service." 4 C.R. 92, Exh. 2, at 1 (sealed exhibit). Significantly, this policy was instituted only after the CPUC invalidated Tariff 173-T under which Pacific Bell had earlier attempted to disconnect Sable.
 
 
 13
 Having asked that steps be taken for the avowed purpose of enabling Pacific Bell to bar Sable under Rule 31 from transmitting its messages over Pacific Bell's lines, the company cannot now claim Sable's fears of being disconnected under that rule are imaginary. "That attempted use of the ... rule as the [appellants'] instrument of compulsion necessarily gives appellees standing to challenge the constitutional validity of the rule." Larson v. Valente, 456 U.S. 228, 241, 102 S.Ct. 1673, 1681, 72 L.Ed.2d 33 (1982); see Miller v. Washington State Bar Ass'n, 679 F.2d 1313, 1316-18 (9th Cir.1982).[6]
 
 
 14
 That no state agency has yet responded to Pacific Bell's request is irrelevant. State agencies have in the past initiated criminal investigations against utility customers that resulted in findings of probable cause which both Pacific Bell and General Telephone then used to justify disconnection under Rule 31 and its predecessor. See, e.g., Goldin v. PUC, 23 Cal.3d 638, 647-48, 153 Cal.Rptr. 802, 592 P.2d 289 (1979); Sokol v. PUC, 65 Cal.2d 247, 249-50, 53 Cal.Rptr. 673, 418 P.2d 265 (1966). Moreover, the district court properly concluded that Sable I 's finding that a case or controversy existed regarding threatened federal prosecutions under 47 U.S.C. Sec. 223(b) established that a case or controversy existed regarding Rule 31. If a federal prosecutor or law enforcement agency initiates an action against Sable pursuant to section 223(b), and in the process receives and forwards to Pacific Bell a finding of probable cause, the utility will be required by Rule 31 to disconnect Sable.[7] Consequently, "an actual and well-founded fear" that federal officials will prosecute purveyors of sexually explicit messages under section 223(b) creates a justiciable case or controversy not only as to Sec. 223(b), but also, as the district court held, as to Rule 31.
 
 
 15
 Under these circumstances, as well as others disclosed in the record and discussed above, "Sable should not have to wait until it is actually prosecuted to challenge the [rule]." Sable I, 827 F.2d at 644. "[T]he alleged danger of this [rule] is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution." American Booksellers Ass'n, 108 S.Ct. at 642.
 
 III.
 
 16
 The district court concluded Pacific Bell acted under color of state law in seeking to implement Rule 31, as required if Sable is to prevail under section 1983. See Thomas v. Carpenter, 881 F.2d 828, 829 (9th Cir.1989). "The ultimate issue in determining whether a person is subject to suit under Sec. 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?' " Rendell-Baker v. Kohn, 457 U.S. 830, 838, 102 S.Ct. 2764, 2770, 73 L.Ed.2d 418 (1982) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982)). The district court correctly determined that it was.[8]
 
 
 17
 Although a regulated utility, Pacific Bell is a private actor, see Carlin Communications, Inc. v. Mountain States Tel. & Tel. Co., 827 F.2d 1291, 1295 (9th Cir.1987), against whom this section 1983 action will lie if Sable established Pacific Bell acted jointly with, or under compulsion from, state officials under a procedural scheme created by the state. See Lugar, 457 U.S. at 941-42, 102 S.Ct. at 2756; Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970).[9] To establish joint participation, " '[i]t is enough that [the private party] is a willful participant in joint activity with the State or its agents.' " Id. at 941, 102 S.Ct. at 2756 (quoting Adickes, 398 U.S. at 152, 90 S.Ct. at 1605).
 
 
 18
 Contrary to Pacific Bell's argument, Sable need not establish the existence of a conspiracy to violate Sable's constitutional rights. See Collins v. Womancare, 878 F.2d 1145, 1154 (9th Cir.1989). On the other hand, "merely complaining to the police does not convert a private party into a state actor." Id. at 1155. "Joint action ... requires a substantial degree of cooperative action." Id. at 1154. Such cooperation exists when a state statute establishes a procedure which when utilized by one private person will violate the constitutional rights of another and the private party "invok[ed] the aid of state officials to take advantage of state-created ... procedures." Lugar, 457 U.S. at 942, 102 S.Ct. at 2756.
 
 
 19
 Pacific Bell sought to invoke state aid to "take advantage of the state-created ... procedure[ ]" of Rule 31 by actively petitioning government officials to enforce section 311.2 of the California Penal Code for the express purpose of obtaining findings of probable cause that would then require Pacific Bell to disconnect Sable. Pacific Bell's conduct of "repeatedly request[ing]" law enforcement agents to undertake action that would trigger a procedure that would violate Sable's first amendment rights satisfies the joint participation requirement. See Howerton v. Gabica, 708 F.2d 380, 385 (9th Cir.1983).
 
 
 20
 The state's participation in the intrusion in this case is manifested in the CPUC's promulgation of Rule 31, which "create[d] the legal framework governing the conduct" and "delegate[d the state's] authority" to disconnect Sable to Pacific Bell, thereby "provid[ing] a mantle of authority that enhanced the power of the harm-causing individual actor." National Collegiate Athletic Ass'n v. Tarkanian, --- U.S. ----, 109 S.Ct. 454, 462, 102 L.Ed.2d 469 (1988); see also Lugar, 457 U.S. at 941, 102 S.Ct. at 2756 ("the procedural scheme created by the statute obviously is a product of state action"). It is true that Pacific Bell cannot invoke this authority without a magistrate's finding of probable cause, but, as the facts of this case demonstrate, private and state action may be interwoven in the regulatory web of Rule 31. As we said in Stypmann v. City & County of San Francisco, a "private towing company is a 'willful participant in a joint activity with the State or its agents' " where:A police officer makes the initial determination that a car will be towed and summons the towing company. The towing company tows the vehicle only at the direction of the officer. The officer designates the garage to which the vehicle will be towed.... The towing company detains the vehicle and asserts the lien for towing and storage charges pursuant to a statutory scheme designed solely to accomplish the state's purpose of enforcing its traffic laws.
 
 
 21
 557 F.2d 1338, 1341 (9th Cir.1977) (quoting United States v. Price, 383 U.S. 787, 794, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966)).
 
 IV.
 
 22
 We agree with the district court's decision not to abstain under Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), or Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), in deference to the CPUC's ongoing administrative inquiry into the Information Access Service.
 
 A.
 
 23
 "[T]he salient fact" in determining whether Younger abstention is appropriate "is whether federal-court interference would unduly interfere with the legitimate activities of the state." Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 433 n. 12, 102 S.Ct. 2515, 2522 n. 12, 73 L.Ed.2d 116 (1982); accord Juidice v. Vail, 430 U.S. 327, 335-36, 97 S.Ct. 1211, 1217-18, 51 L.Ed.2d 376 (1977). Abstention under Younger is ordinarily required where "[a]ny adjudication by this Court, or by the District Court, ... would necessarily determine the same questions ... as are at issue" in the pending state proceedings. Feaster v. Miksch, 846 F.2d 21, 22 (6th Cir.1988).[10] Such interference with a state proceeding is usually inconsistent with the essence of Younger, which rests on notions of comity and respect for state functions. Younger, 401 U.S. at 43-45, 91 S.Ct. at 750-51; Beltran v. California, 857 F.2d 542, 548 (9th Cir.1988).[11]
 
 
 24
 Conversely, the concerns underlying Younger are not involved in this case because "[t]his case does not present the same kind of issue" as is before the CPUC, Conover v. Montemuro, 477 F.2d 1073, 1082 (3d Cir.1973), and decision of this case "could not prejudice the conduct" of the state proceeding. Gerstein v. Pugh, 420 U.S. 103, 108 n. 9, 95 S.Ct. 854, 860 n. 9, 43 L.Ed.2d 54 (1975) (citing with approval Conover, 477 F.2d at 1082). There is no indication Rule 31 has been or will be addressed in the ongoing CPUC proceedings. There is, in fact, no mention of the rule in either the commission's order initiating the proceeding or in its 39-page interim order, which, inter alia, set forth the issues remaining to be resolved by the CPUC. Since the district court's grant of declaratory and injunctive relief "would in no way adversely affect the state's legitimate interest in conducting its [CPUC hearings] without direct interference," Conover, 477 F.2d at 1091 (Adams, J., concurring), Younger abstention was not required.[12]
 
 B.
 
 25
 The district court correctly rejected Pullman abstention as "inappropriate where First Amendment rights are implicated." The Supreme Court recently rejected arguments for Pullman abstention in such a case, explaining:Abstention is, of course, the exception and not the rule, Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976), and we have been particularly reluctant to abstain in cases involving facial challenges based on the First Amendment. We have held that "abstention ... is inappropriate for cases [where] ... statutes are justifiably attacked on their face as abridging free expression." Dombrowski v. Pfister, 380 U.S. 479, 489-90, 85 S.Ct. 1116, 1122-23, 14 L.Ed.2d 22 (1965). "In such case[s] to force the plaintiff who has commenced a federal action to suffer the delay of state-court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect." Zwickler v. Koota, 389 U.S. 241, 252, 88 S.Ct. 391, 397-98, 19 L.Ed.2d 444 (1967).
 
 
 26
 Houston v. Hill, 482 U.S. 451, 467-68, 107 S.Ct. 2502, 2512-13, 96 L.Ed.2d 398 (1987) (footnote omitted); see Playtime Theaters, Inc. v. City of Renton, 748 F.2d 527, 532 (9th Cir.1984) ("Pullman abstention would almost never be appropriate in first amendment cases because such cases involve strong federal interests and because abstention could result in the suppression of free speech"), rev'd on other grounds, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986).
 
 V.
 
 27
 On appeal, the CPUC argues for the first time, as it may, that Sable's claim against it is barred by the eleventh amendment. See Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 466-67, 65 S.Ct. 347, 351-52, 89 L.Ed. 389 (1945). Since this appeal was filed, however, the Supreme Court concluded that Congress did not intend states to be subject to suit under section 1983. Will v. Michigan Dep't of State Police, --- U.S. ----, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). Judgment therefore must be entered for the CPUC on an alternative ground: as an arm of the state, see Air Transport Ass'n of America v. PUC, 833 F.2d 200, 203-04 (9th Cir.1987), the CPUC is not a "person" for purposes of section 1983 and therefore cannot be sued under that statute. Will, 109 S.Ct. at 2309.[13]
 
 VI.
 
 28
 The district court, in the exercise of its discretion, awarded attorneys' fees totalling $150,000 to Sable pursuant to 42 U.S.C. Sec. 1988.[14] Pacific Bell and General Telephone contend Sable should not have been awarded some or all of these fees because Sable was not a prevailing party and because special circumstances counsel against it.[15]A.
 
 
 29
 Since Sable clearly prevailed on the Rule 31 issue,[16] whether or not Sable also "prevailed" with respect to the Tariff 173-T issue is irrelevant:
 
 
 30
 [P]laintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.
 
 
 31
 Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quotation, citation and footnote omitted); see Scofield v. City of Hillsborough, 862 F.2d 759, 766 (9th Cir.1988). "Hensley approves a generous standard for determining when a plaintiff is a 'prevailing party.' The extent of the plaintiff's success is considered only in determining the amount of the award." Lummi Indian Tribe v. Oltman, 720 F.2d 1124, 1125 (9th Cir.1983) (emphasis in original).
 
 
 32
 The question, then, is whether the amount of the award--especially the inclusion of fees for time spent by Sable's attorneys in attacking Tariff 173-T--was "reasonable." See Hensley, 461 U.S. at 433, 103 S.Ct. at 1939. Awarding Sable fees incurred in challenging Tariff 173-T was reasonable if Sable "establish[ed] some sort of clear, causal relationship between the litigation brought and the practical outcome realized." American Constitutional Party v. Munro, 650 F.2d 184, 188 (9th Cir.1981) (emphasis in original). The district court found, and we agree, that there was a causal relationship between Sable's suit and the CPUC's invalidation of Tariff 173-T.
 
 
 33
 The existence of such a relationship turns on two subsidiary inquiries:
 
 
 34
 First, we must determine what [Sable] sought to accomplish in bringing [t]his lawsuit and then determine whether the lawsuit was causally linked to the relief actually obtained. Second, there must be a legal basis for the [Sable] claim--it must not be frivolous, unreasonable or groundless.
 
 
 35
 Sablan v. Department of Finance, 856 F.2d 1317, 1325 (9th Cir.1988) (citations and quotation omitted). Sable's suit undeniably meets the second of these two requirements.[17] We are satisfied it meets the first, as well.
 
 
 36
 The relief sought by Sable was essentially identical to that ordered by the CPUC. "As long as the relief obtained is of the same general type as that demanded by [Sable], we will then assess whether there was a causal connection between the relief obtained and the lawsuit." Sablan, 856 F.2d at 1325 (internal quotation omitted).
 
 
 37
 "Whether a litigant has shown a sufficient casual relationship between the lawsuit and the practical outcome realized is a pragmatic factual inquiry for the district court." Id. (internal quotation omitted). The district court concluded "the record indicates that the CPUC's decision to remove the challenged language from Tariff 173-T was in large part in response to plaintiffs' claim in this action." The CPUC's own "Order Instituting Investigation" of the Information Access Service supports this conclusion. The order states the CPUC investigation was prompted in part by "the content of some 976 programs. Currently, the Commission is in federal court litigating this issue with regard to obscenity." 3 C.R. 58, Exh. A, at 6. On the other hand, Pacific Bell relies on the declaration of the administrative law judge who presided over the CPUC's investigation that Sable's suit "was not a catalyst" to the administrative action. 6 C.R. 123, Exh. B., at 2. It is the district court's function to resolve such conflicts. We cannot say the court's decision to resolve the conflict in Sable's favor was clear error. See Sablan, 856 F.2d at 1326.
 
 B.
 
 38
 "Plaintiffs prevailing in a civil rights action should ordinarily receive attorney's fees unless special circumstances would render such an award unjust." Lummi, 720 F.2d at 1125 (internal quotation omitted); accord Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 416-17, 98 S.Ct. 694, 697-98, 54 L.Ed.2d 648 (1978). Pacific Bell and General Telephone base their opposition to the award on two special circumstances: (1) Sable is not the type of "private attorney general" Congress intended to encourage by allowing recovery of fees under section 1988; and (2) the balance of equities disfavored a fee award because neither utility had the power either to alter or to enforce Rule 31.[18]
 
 
 39
 Pacific Bell argues an award of attorneys' fees is not necessary to encourage lawsuits by large corporations, such as Sable, who sue to protect multimillion-dollar businesses. But as we have held, "[t]he fact that a party has a financial interest in the outcome of litigation ... is not a valid reason for denying attorney's fees under section 1988," Ackerley Communications v. City of Salem, 752 F.2d 1394, 1396 (9th Cir.1985), and "[w]hether or not the action would have been brought in the absence of section 1988 is irrelevant." Id. at 1397. " 'The congressional purpose in providing attorney's fees in civil rights cases was to eliminate financial barriers to the vindication of constitutional rights and to stimulate voluntary compliance with the law.' Thus there are public interest considerations that transcend the conferring of a financial benefit on a prevailing party." Id. (quoting Seattle School Dist. No. 1 v. Washington, 633 F.2d 1338, 1348 (9th Cir.1980)) (emphasis added by Ackerley court), aff'd, 458 U.S. 457, 102 S.Ct. 3187, 73 L.Ed.2d 896 (1982).[19]
 
 
 40
 As we recently noted in Herrington v. County of Sonoma, "[o]ur position in Ackerley is consistent with that of other circuits which have determined that a plaintiff's ability to pay fees should not be used as a basis for denying fees." 883 F.2d 739, 743 (9th Cir.1989) (order). In light of this precedent, we reject Pacific Bell's argument that the fee award was not appropriate under section 1988 on this ground.
 
 
 41
 Nor was it an abuse of discretion for the district court to reject Pacific Bell's argument that a fee award would be inequitable because Pacific Bell was without power to effectuate the use of Rule 31. The adoption by Pacific Bell of a policy of petitioning law enforcement officials to begin criminal actions against Sable so Pacific Bell could obtain findings of probable cause and disconnect Sable under Rule 31 belies any suggestion that Pacific Bell was an "innocent participant[ ]." Chastang v. Flynn & Emrich Co., 541 F.2d 1040, 1045 (4th Cir.1976).
 
 C.
 
 42
 General Telephone argues it should not have been held jointly and severally liable for all of Sable's attorneys' fees because it did no more than rely on Rule 31 and because it was only a belated intervenor in the litigation.
 
 
 43
 As we explained in Rosenfeld v. Southern Pacific Co., "a defense based upon reliance on state law would [not] affect the propriety of awarding to the plaintiff proper attorneys' fees, but ... might affect the proper amount of the fee." 519 F.2d 527, 530 (9th Cir.1975) (per curiam); accord Cunningham v. County of Los Angeles, 859 F.2d 705, 713 (9th Cir.1988).[20] General Telephone's essentially passive reliance on Rule 31 therefore does not make an award of attorneys' fees inappropriate.
 
 
 44
 We are persuaded, however, that the district court abused its discretion in determining the extent of General Telephone's liability.
 
 
 45
 In exercising its discretion, the district court should "insure a fair result for both parties." Southeast Legal Defense Group v. Adams, 657 F.2d 1118, 1125 (9th Cir.1981). If, as appears likely, the conduct of Pacific Bell was the focus of the litigation and required a larger portion of the time of plaintiff's counsel, it is appropriate to allocate the burden of the fee award accordingly. Id. at 1126.
 
 
 46
 The district court also should take account of the extent of defendants' culpability, see, e.g., Council for Periodical Distribs. Ass'ns v. Evans, 827 F.2d 1483, 1487-88 (11th Cir.1987); Seymour v. Hull & Moreland Eng'g, 605 F.2d 1105, 1117 (9th Cir.1979); Rosenfeld, 519 F.2d at 530, and it is clear that Pacific Bell's threats were instrumental in causing the lawsuit to be instituted and to be continued after the CPUC had stricken the offensive language in Tariff 173-T. Pacific Bell was also more aggressive in seeking implementation of Rule 31.
 
 
 47
 In addition, General Telephone claims Sable had already incurred more than $67,000 in fees when General Telephone intervened. Failure to apportion fees fairly between the defendant and the intervenor would discourage intervention in civil rights cases, a result to be avoided. Cf. Independent Fed'n of Flight Attendants v. Zipes, --- U.S. ----, 109 S.Ct. 2732, 2738, 105 L.Ed.2d 639 (1989) ("piecemeal litigation of complex civil rights controversies ... is strongly disfavored").
 
 
 48
 Accordingly, we vacate the fee award and remand for redetermination of the percentage of the fees to be borne by each defendant.
 
 
 49
 AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART and REMANDED.[21]
 
 
 
 [1]
 General Telephone's tariff was modeled after Pacific Bell's and therefore is included in references to Tariff 173-T throughout this opinion
 
 
 [2]
 Rule 31 provides in relevant part:
 Any communications utility operating under the jurisdiction of this Commission shall refuse service to a new applicant and shall disconnect existing service to a customer upon receipt from any authorized official of a law enforcement agency of a writing, signed by a magistrate, as defined by Penal Code Sections 807 and 808, finding that probable cause exists to believe that the use made or to be made of the service is prohibited by law, or that the service is being or is to be used as an instrumentality, directly or indirectly, to violate or to assist in the violation of the law.
 California PUC Dec. No. 91188, Case No. 4930, 3 Cal. PUC2d 87, 89-90, App. A(1) (1980).
 
 
 [3]
 The CPUC held:
 This provision runs counter to this Commission's policy of avoiding distinctions between 976 programs on the basis of content.... The current language at Pacific's 976 IAS Tariff, Section C.1.b should be stricken. Instead, the tariff should state that the utility's transmission of 976 material alleged to be obscene shall be in accordance with federal law.
 Investigation on the Commission's Own Motion into 976 Information Access Service, Dec. No. 87-01-042, Case Nos. I.85-04-047 and 85-04-021, at 19-20 (Jan. 14, 1987) (interim order).
 
 
 [4]
 Pacific Bell and the CPUC also insist there are genuine disputes as to material facts, but the facts are not in dispute. The dispute is not over what occurred, but rather over whether what occurred created a cause of action under section 1983 over which the district court had jurisdiction. The only question before the district court, and before us, is whether summary judgment was appropriate as a matter of law. See Farley v. Henderson, 875 F.2d 231, 233 (9th Cir.1989)
 
 
 [5]
 Although it is not entirely clear, appellants appear to assert there is no case or controversy both because the issues presented are nonjusticiable and because Sable has no standing. See Western Mining Council, 643 F.2d at 623 (justiciability and standing two requirements of case and controversy). To the extent appellants challenge Sable's standing, they claim only a lack of "injury in fact," and do not raise the issues of causation or redressability. Since this aspect of the standing analysis is essentially the same as the justiciability analysis, see Poe, 367 U.S. at 503-05, 81 S.Ct. at 1755-57, we do not distinguish between what technically may be two separate attacks on the district court's determination that Sable presented a live case or controversy. Cf. Ripplinger v. Collins, 868 F.2d 1043, 1047 n. 3 (9th Cir.1989); Sable-Communications v. FCC, 827 F.2d 640, 643-44 (9th Cir.1987)
 
 
 [6]
 Both of these cases involved a state agency's use of its own rule, but the question considered here is whether there was a case or controversy, not whether state action was involved, a question addressed in Section III
 
 
 [7]
 Pacific Bell does not contend that a finding of probable cause by a federal magistrate under Sec. 223(b) would not trigger Rule 31
 
 
 [8]
 Because we agree with the district court's resolution of the state action issue, we do not reach Sable's contention that appellants are foreclosed from raising this issue by a previous stipulation
 
 
 [9]
 There is no question but that the CPUC acted under color of state law. The CPUC was created by the California Constitution Art. XII, Sec. 22, and California's police power over public utilities has been vested in it. Sutter Butte Canal Co. v. Railroad Comm'n, 202 Cal. 179, 184, 259 P. 937 (1927), aff'd, 279 U.S. 125, 49 S.Ct. 325, 73 L.Ed. 637 (1929). The CPUC derives all its powers from the state constitution and legislature, Television Transmission, Inc. v. PUC, 47 Cal.2d 82, 84, 301 P.2d 862 (1956), and the state Supreme Court has consistently held that CPUC regulations, as state action, must comply with the requirements of the federal constitution. See, e.g., Commercial Communications, Inc. v. PUC, 50 Cal.2d 512, 524, 327 P.2d 513 (1958). Indeed, the California Supreme Court invalidated the predecessor to Rule 31 as violative of federal and state due process requirements. Sokol, 65 Cal.2d at 256, 53 Cal.Rptr. 673, 418 P.2d 265
 
 
 [10]
 Unless, of course, the same question is at issue in the federal and state actions, the federal action presents no "challenge" to the state proceeding, in which case Younger abstention is not required. Polykoff v. Collins, 816 F.2d 1326, 1332-33 (9th Cir.1987)
 
 
 [11]
 The essence of Younger is that the concept of "Our Federalism" envisions "a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." Younger, 401 U.S. at 44, 91 S.Ct. at 750
 
 
 [12]
 We therefore do not consider whether the two other prerequisites for Younger abstention were present. See Middlesex, 457 U.S. at 431-32, 102 S.Ct. at 2520-21; Polykoff, 816 F.2d at 1332
 
 
 [13]
 We deny Sable's motion to substitute the members of the CPUC in their official capacity as individual defendants in place of the CPUC, pursuant to Fed.R.App.P. 43(b) or Fed.R.Civ.P. 21. Had Sable sued the commissioners of the CPUC, its action might have survived Will. See 109 S.Ct. at 2311 n. 10. However, substitution under Rule 43(b) is appropriate only where "necessary," and " '[n]ecessary' means that a party to the suit is unable to continue," Alabama Power Co. v. ICC, 852 F.2d 1361, 1366 (D.C.Cir.1988), "such as where a party becomes incompetent or a transfer of interest in the company or property involved in the suit has occurred." Id. Implicit in this interpretation is the precondition that the original party was a proper party to the suit. The CPUC was not such a party, for the Supreme Court held that Congress never intended in section 1983 to create jurisdiction over states and their agencies. Nothing on the face of Rule 21 allows substitution of parties. The rule by its terms creates means to cure "[m]isjoinder of parties." Even if the rule applied, substitution would be proper only where "just." Thus, prejudice to the non-moving party will defeat a Rule 21 motion. Helene Curtis Indus. v. Sales Affiliates, Inc., 105 F.Supp. 886, 900 (S.D.N.Y.), aff'd, 199 F.2d 732 (2d Cir.1952); accord Lanigan v. LaSalle Nat'l Bank, 108 F.R.D. 660, 663 (N.D.Ill.1985). In this case, prejudice might result to individual commissioners substituted during an appeal after final judgment since their interests and potential defenses may have differed from those of the CPUC
 
 
 [14]
 This section provides, in pertinent part, that "[i]n any action or proceeding to enforce a provision of [section 1983], the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." 42 U.S.C. Sec. 1988
 
 
 [15]
 Because suit was barred against the CPUC by the Supreme Court's decision in Will, 109 S.Ct. at 2309, the CPUC cannot be required to pay any portion of Sable's attorneys' fees. See Kentucky v. Graham, 473 U.S. 159, 165, 168, 105 S.Ct. 3099, 3105, 3106, 87 L.Ed.2d 114 (1985)
 
 
 [16]
 Pacific Bell's contentions to the contrary are meritless. While the district court relied on threatened federal action to find the controversy ripe for adjudication, it specifically held a state regulation--Rule 31--violated Sable's first amendment rights. We reject the argument that such a holding does not fall within Section 1983 unless the court expressly repeats the truism that the protections of the first amendment are applicable to the states through the due process clause of the fourteenth amendment. See Gitlow v. New York, 268 U.S. 652, 666, 45 S.Ct. 625, 629-30, 69 L.Ed. 1138 (1925)
 
 
 [17]
 Sable's challenge to Tariff 173-T was hardly frivolous. As the CPUC found, the tariff adopted a content-based ban on communication invalid under the commission's own regulations. Interim Order at 24-25. Clearly, such a content-based regulation raises significant first amendment questions where, as here, it was not limited to speech outside first amendment protection. Tariffs 173-T and A-14 reached not only obscene speech, but also speech that was "lewd, lascivious, filthy, [or] indecent." The Supreme Court recently held a federal statute unconstitutional to the extent it reached "indecent" telephone messages. See Sable Communications v. FCC, --- U.S. ----, 109 S.Ct. 2829, 2836, 106 L.Ed.2d 93 (1989). Moreover, the tariffs allowed automatic termination of service "upon receipt of an order of a court so directing," a provision similar to one in Rule 31 the district court found particularly offensive to the first amendment
 
 
 [18]
 Pacific Bell also argues the fees Sable sought to recover were inadequately documented. Sable's documentation seems to us sufficient to satisfy a client it might bill in the same way, see 5 C.R. 110, Exh. C (125 pages of attorney-by-attorney, day-by-day and fraction-of-an-hour-by-fraction-of-an-hour breakdown), and the Supreme Court has suggested hours properly billed to counsel's clients are properly billed as to his adversary pursuant to statutory authority. See Hensley, 461 U.S. at 434, 103 S.Ct. at 1939-40
 
 
 [19]
 Concurring in Ackerley, Judge Sneed noted that, as Pacific Bell argues, section 1988 could have been interpreted "so as to focus only on those cases in which the prospect of fee shifting reasonably could be said to have been marginally influential in the decision to litigate," Id. at 1398 (Sneed, J., concurring), citing the same cases relied upon by Pacific Bell--Aho v. Clark, 608 F.2d 365, 367 (9th Cir.1979) and Buxton v. Patel, 595 F.2d 1182, 1184-85 & n. 3 (9th Cir.1979). Ackerley, 752 F.2d at 1398 n. 2. Judge Sneed went on to note "[t]he precedents, however, point as [the majority opinion] indicates." Id
 
 
 [20]
 The Supreme Court recently held that even "innocent intervenors"--that is, intervenors who "have not been found to have violated anyone's civil rights"--can be assessed fees, though only if the intervention was "frivolous, unreasonable, or without foundation." Independent Fed'n of Flight Attendants v. Zipes, --- U.S. ----, 109 S.Ct. 2732, 2739, 105 L.Ed.2d 639 (1989). Although Zipes is a Title VII case, and thus fees were awarded under 42 U.S.C. Sec. 2000e-5(k) rather than section 1988, these two statutes "are to be interpreted alike." Id. 109 S.Ct. at 2735 n. 2. General Telephone, which was found to have violated Sable's first amendment rights in the same manner as Pacific Bell, was not an innocent intervenor and cannot avail itself of this higher standard. See id. at 2737-39
 
 
 [21]
 Each party to bear its own costs