**HRPT PROPERTIES TRUST,**
**et al., Plaintiffs,**

v.

**Linda LINGLE, in her official capacity as Governor of the State of Hawaii, Defendant,**

**and**

**Citizens for Fair Valuation, Intervenor–Defendant.**

**CIV. No. 09–00375 SOM/KSC.**

United States District Court, D. Hawai'i.

Feb. 28, 2011.

2. Thus, even if the Court had taxed the copying costs, the amount would at minimum be reduced by one-third.

Clifford Sloan, David W. Foster, Robyn N. Carr, Skadden, Arps, Slate, Meagher & Flom LLP, Washington, DC, Matthew C. Shannon, Ryan H. Engle, Bruce D. Voss, Bays Deaver Lung Rose & Holma, Honolulu, HI, for Plaintiffs.

David A. Webber, Deborah Day Emerson, Girard D. Lau, James C. Paige, Office of the Attorney General, Honolulu, HI, for Defendant.

Keith S. Agena, Bendet Fidell Sakai & Lee, Jon M. Van Dyke, Sherry P. Broder, Honolulu, HI, for Intervenor–Defendant.

*AMENDED ORDER ADOPTING FINDINGS AND RECOMMENDATION REGARDING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES*

SUSAN OKI MOLLWAY, Chief Judge.

## I. *INTRODUCTION.*

Plaintiff CommonWealth REIT, formerly known as HRPT Properties Trust, and

others (collectively, "CommonWealth") object to the Findings & Recommendation ("F & R") by the Magistrate Judge recommending denial of their motion for attorneys' fees and expenses.

CommonWealth seeks attorneys' fees under the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988, from Intervenor–Defendant Citizens for Fair Valuation ("CFV"). Magistrate Judge Kevin S.C. Chang determined that CFV was not liable for attorneys' fees because CFV was an innocent intervenor, and CFV's actions were not frivolous, unreasonable, or without foundation. The Magistrate Judge further found that CommonWealth's fee request was grossly excessive and unreasonable.

Pursuant to Local Rule 7.2(d), the court finds this matter suitable for disposition without a hearing. After reviewing CommonWealth's Objections, the court overrules CommonWealth's Objections to the Magistrate Judge's F & R, and ADOPTS the Magistrate Judge's F & R in its entirety.

## II. *FACTUAL BACKGROUND.*

The parties are familiar with the background of this case. The court repeats the background facts only as necessary for a decision on the Objections to the Magistrate Judge's F & R, see "Obj.", ECF No. 126, in the discussion section below. Additional background facts are contained in this court's summary judgment order on May 31, 2010, ECF No. 100, and in the Magistrate Judge's F & R on December 21, 2010, ECF No. 123.

On September 29, 2009, CFV filed a motion to intervene. CFV is a nonprofit organization consisting of a number of Plaintiffs' lessees. On October 21, 2009, the Magistrate Judge issued an Order Granting CFV's Motion to Intervene. On May 31, 2010, this court issued an Order Granting Plaintiffs' Motion for Summary Judg-

ment, Denying Defendant Linda Lingle's Second Counter Motion for Summary Judgment, and Denying Intervenor–Defendant Citizens for Fair Valuation's Counter Motion for Summary Judgment, 715 F.Supp.2d 1115 (D.Haw.2010) ("SJ Order"). On June 1, 2010, the court entered judgment in favor of CommonWealth and against Defendant Lingle and CFV, pursuant to the SJ Order. On June 3, 2010, the Magistrate Judge granted CommonWealth's request to extend the time for filing a motion for an award of attorneys' fees.

On June 30, 2010, Defendant Lingle filed a Notice of Appeal. On September 29, 2010, CommonWealth and Defendant Lingle reached a settlement agreement. As part of the agreement, CommonWealth agreed not to seek attorneys' fees or costs incurred in this lawsuit from Defendant Lingle, the State, State entities, or other State agents, officers, or employees. Obj., Ex. 1 ¶ 11. On October 18, 2010, the Ninth Circuit issued an Order dismissing the appeal with prejudice pursuant to a stipulation of the parties.

On December 21, 2010, the Magistrate Judge issued his F & R denying Plaintiffs' Motion for Attorneys' Fees and Expenses. Two days later, the court granted CommonWealth's request for an extension of time to file objections to the F & R. On January 18, 2011, CommonWealth filed Objections to the F & R.

## III. *STANDARD OF REVIEW.*

Congress has empowered magistrate judges, upon referral of dispositive pretrial motions by district judges, to conduct hearings and issue findings and recommendations regarding dispositive pretrial motions. *See* 28 U.S.C. § 636(b)(1)(B); *see also* Fed.R.Civ.P. 72(b) (promulgating rule). The Federal Rules of Civil Procedure permit a district judge to similarly

refer a post-judgment motion for attorney's fees "as if it were a dispositive pretrial matter," *see* Fed.R.Civ.P. 54(d)(2)(D), and such motions are customarily referred to magistrate judges in this district, *see* Local Rule 54.3(h).

The district judge may accept, reject, or modify, in whole or in part, the findings and recommendation made by the magistrate judge. Fed.R.Civ.P. 72(b). If a party timely objects to portions of the findings and recommendation, the district judge reviews those portions of the findings and recommendation *de novo*. Fed.R.Civ.P. 72(b)(3); Local Rule 74.2. The district judge may consider the record developed before the magistrate judge. Local Rule 74.2. The district judge also has discretion to receive further evidence. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b)(3); Local Rule 74.2; *see also United States v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) (district judge has wide discretion in deciding whether to allow new evidence). The *de novo* standard requires the district court to consider a matter anew and arrive at its own independent conclusions, but a *de novo* hearing is not ordinarily required. *United States v. Remsing,* 874 F.2d 614, 617 (9th Cir.1989); *United States v. Boulware,* 350 F.Supp.2d 837, 841 (D.Haw.2004); Local Rule 74.2.

The district judge may accept the portions of the findings and recommendation to which the parties have not objected as long as it is satisfied that there is no clear error on the face of the record. *See United States v. Bright,* Civ. No. 07–00311 ACK/KSC, 2009 WL 5064355, at *3 (D.Haw. Dec. 23, 2009); *Stow v. Murashige,* 288 F.Supp.2d 1122, 1127 (D.Haw. 2003); Fed.R.Civ.P. 72(b) advisory committee's note.

## IV. ANALYSIS.

CommonWealth challenges the Magistrate Judge's F & R and seeks $1,512,949.92 in attorneys' fees and expenses pursuant to 42 U.S.C. § 1988 from CFV. The Magistrate Judge, finding that CFV was not liable for attorneys' fees because CFV was an innocent intervenor, reasoned that it would be inequitable to allow CommonWealth to recover fees from CFV. In its Objections, CommonWealth largely repeats the arguments rejected by the Magistrate Judge. CommonWealth's arguments remain unpersuasive. The Magistrate Judge appropriately recommended that attorneys' fees and costs not be awarded to CommonWealth, and this court adopts the Magistrate Judge's F & R in its entirety.

### A. CFV is an Innocent Intervenor.

 CFV is an "innocent intervenor" under the definition set forth by the Supreme Court in *Independent Federation of Flight Attendants v. Zipes,* 491 U.S. 754, 109 S.Ct. 2732, 105 L.Ed.2d 639 (1989), and discussed by the Ninth Circuit in *Costco Wholesale Corporation v. Hoen,* 538 F.3d 1128 (9th Cir.2008). The word "innocent" refers to "an intervenor who has not been found liable for engaging in unlawful activity." *Costco,* 538 F.3d at 1134; *Sable Commc'ns of Cal. Inc. v. Pac. Tel. & Tel. Co.,* 890 F.2d 184, 194 n. 20 (9th Cir.1989). The Magistrate Judge correctly stated that a prior finding of liability for engaging in unlawful activity is a prerequisite to establishing that an intervenor is not innocent.

CommonWealth does not dispute that a finding of unlawful activity is required. Nor does CommonWealth point to anything in the record that constitutes an express finding that CFV engaged in unlawful activity. As the court is unpersuaded by CommonWealth's argument that a finding of illegality is implicit in this court's SJ Order, this court concludes that CFV is "innocent" for purposes of CommonWealth's motion for fees and is not

liable for those fees. The SJ Order declared a state law unconstitutional. While it rejected CFV's arguments to the contrary, the SJ Order did not imply that CFV's arguments or actions were illegal.

█ Furthermore, "§ 1988 fee awards should be made against losing intervenors ... 'only where the intervenors' action was frivolous, unreasonable, or without foundation." *Costco*, 538 F.3d at 1133 (quoting *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1288 (9th Cir.2004), which in turn quoted *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 761, 109 S.Ct. 2732, 105 L.Ed.2d 639 (1989)). CommonWealth cites this proposition in its briefing, *see* Obj. at 5–6, without expressly objecting to the F & R's findings that CFV's actions were not frivolous, unreasonable, or without foundation. Even if this court treats CommonWealth as having implicitly objected to those findings, this court finds no error in those findings. *See Abordo v. State of Hawaii*, 902 F.Supp. 1220, 1224 (D.Haw.1995).

This court is unpersuaded by any of the five reasons advanced by CommonWealth for the proposition that CFV is not an innocent intervenor.

1. *CommonWealth's Enforcement of Its Constitutional Rights Does Not Support Its Request for Attorneys' Fees.*

First, CommonWealth argues that its prompt enforcement of its constitutional rights supports a request for an award of attorneys' fees. This argument seems to concede that CFV did not actually deprive CommonWealth of its constitutional rights. The court's focus is therefore on whether there was any prior finding that CFV engaged in unlawful activity. *See Costco*,

538 F.3d at 1134 (quoting *Zipes*, 491 U.S. at 762–63, 109 S.Ct. 2732). CommonWealth fails to point to such a finding. As CFV has never been found to have engaged in an unlawful activity, it is innocent for purposes of determining fee liability. *See Costco*, 538 F.3d at 1134 (finding the intervenor innocent for the purposes of determining fee liability under § 1988(b) because it was not liable under § 1983 for adhering to an unconstitutional state law).

CommonWealth complains that "the logic" of the Magistrate Judge's findings means that no intervenor could ever be held liable for attorneys' fees in a case involving a pre-enforcement constitutional challenge to a statute. *See* Obj. at 8. The F & R itself makes no such global statement; the Magistrate Judge's findings were clearly tied to the specific facts of the present case.

CommonWealth argues that the precedent for awarding fees against government agents and entities who were prevented from violating a plaintiff's constitutional rights by a declaratory judgment or injunction should also apply to intervenors. *See* Obj. at 7. In support of that argument, CommonWealth cites two cases from its original motion for attorneys' fees. *See Runyon v. Fasi*, 762 F.Supp. 280 (D.Haw. 1991); *Yuclan Int'l v. Arre*, 504 F.Supp. 1008 (D.Haw.1980). As the Magistrate Judge stated, those cases did not involve the propriety of awarding fees against an intervenor.[1] *See* F & R at 1236, n. 6. The issue before this court and the Magistrate Judge is whether CFV, as an intervenor, is liable for fees. The authorities cited by CommonWealth do not speak to this issue.

---

1. CommonWealth also cites to *Council for Periodical Distributors Associations v. Evans*, 827 F.2d 1483 (11th Cir.1987), for the proposition that, when two or more defendants are jointly and severally liable for actively participating in a constitutional violation, all liable

defendants should be liable for attorneys' fees. *See* Obj. at 18–19. As the Magistrate Judge stated, *Evans* was inapposite as it did not involve intervenors, but instead addressed the liability of the named defendants. See F & R at 1236 n. 7.

### 2. CFV's Role in the Legislation Does Not Strip It of Innocent Intervenor Status.

Second, CommonWealth argues that CFV's "essential role" in securing the unconstitutional legislation prevents innocent intervenor status. This court agrees with the Magistrate Judge that *Costco* provides otherwise. *See* F & R at 1237–38.

CommonWealth argues that *Costco* is distinguishable from the present case; it argues that the intervenor in *Costco* was not liable for fees because of the lack of evidence in the record that the intervenor lobbied for the unconstitutional law or that such lobbying was the reason for the enactment of the privilege. *See* Obj. at 9; *Costco*, 538 F.3d at 1134. CommonWealth says that the Magistrate Judge wrongfully characterized the Ninth Circuit's reasoning on this point as "secondary." *See* Obj. at 9. But this language was indeed secondary to the primary reason set forth by the Ninth Circuit for declining fees and expenses against the intervenor in *Costco*. The complete context for the language upon which CommonWealth relies establishes this:

> Costco contends that WBWWA is not innocent because its lobbying led the Washington Legislature to pass the unconstitutional direct-sales privilege. This argument is also at odds with *Zipes* because it suggests that an intervenor may be found blameworthy without any prior finding of liability for engagement in unlawful activity. *See* 491 U.S. at 762–63, 109 S.Ct. 2732. Moreover, there is no evidence in the record that WBWWA lobbied for the direct-sales privilege or that such lobbying was the reason for the enactment of the privilege.

*Costco*, 538 F.3d at 1134. The Ninth Circuit clearly rejected the argument that "lobbying makes an intervenor non-inno-

cent" as being "at odds" with the requirement in *Zipes* that an intervenor liable for fees have been the subject of a "prior finding of liability for engagement in unlawful activity." *Id.*

Citing *United States v. Bond,* 552 F.3d 1092 (9th Cir.2009), CommonWealth asserts that the *Costco* language regarding the absence of evidence of lobbying or the effect of lobbying, even if dicta, must be treated as binding circuit law "regardless of whether it was in some technical sense 'necessary' to [the] disposition of the case." *Id.* at 1096; Obj. at 9–10. This court does not read that statement in *Bond* as turning every Ninth Circuit utterance into binding circuit law. Instead, that statement in *Bond* appears to refer to the import of statements of law, even if in dicta. The reference in *Costco* that CommonWealth would elevate to the status of binding circuit law is a factual description of the record in *Costco,* not a legal proposition at all. The quoted *Bond* statement about binding circuit law simply does not apply to that factual description in *Costco.*

In its Objections, CommonWealth expands and misrepresents the scope of what this court ruled in its SJ Order. In a footnote, this court stated that CFV lessees played an essential role in advocating for passage of Act 189. See SJ Order, 715 F.Supp.2d at 1135 n. 4. While this court noted that CFV had sponsored Act 189 and lobbied for its passage, this court did not find such sponsorship or advocacy unlawful. It was Act 189 that was unlawful, not the effort to get it passed. CFV's lobbying activity does not strip it of its innocent intervenor status. There must be a prior finding of liability against CFV for having engaged in unlawful activities, and CommonWealth fails to demonstrate that any such finding exists.

### 3. CFV's Alleged Violation of State Ethics Laws Does Not Preclude CFV's Innocent Intervenor Status.

■ Third, CommonWealth argues that CFV is not an innocent intervenor given its alleged violation of state ethics laws. This court agrees with the Magistrate Judge that this argument is unavailing. *See* F & R at 1237–38. As CommonWealth recognizes, the State Ethics Commission enforces state ethics laws. *See* Obj. at 13 n. 6. This court is not the body charged with determining in the first instance whether those laws have been violated. Whether CFV complied with those laws was therefore not properly before this court for a decision. The record contains no suggestion that the State Ethics Commission has found a violation of law by CFV.

CommonWealth proposes that this court defer ruling on its motion for fees and costs until the State Ethics Commission rules on the matter. While hoping that a delay will result in a ruling by the State Ethics Commission that CFV engaged in unlawful activity, thereby providing the prior finding of illegality required by *Costco*, CommonWealth cannot suggest any date by which that might occur.

■ CommonWealth has already been granted two extensions. The Magistrate Judge gave CommonWealth an extension of time to file its original attorneys' fee motion. *See* F & R at 1238. The F & R noted that it was possible that had the motion been filed within 14 days of the entry of judgment, the Magistrate Judge would have issued its F & R before the ethics complaint was even filed. After the F & R was issued, the Magistrate Judge also granted CommonWealth's request to extend the deadline for filing objections to the F & R. No additional deferral is appropriate.

### 4. CommonWealth Misreads the F & R.

Fourth, citing to page 1235 of the F & R, CommonWealth complains that the Magistrate Judge incorrectly concluded that a finding of the intervenor's illegal action must be made in the merits litigation before the attorneys' fee litigation. Obj. at 13–14. Page 1235 of the F & R contains no such statement. The Magistrate Judge did not state such a broad rule regarding when a determination of unlawful activity must be made.

Throughout its Objections, and again in connection with this argument, CommonWealth relies on *Sable*, in which the Ninth Circuit explained that a private intervenor is liable for attorneys' fees if the private intervenor "acted jointly with ... state officials under a procedural scheme created by the state." *Sable*, 890 F.2d at 189. CommonWealth analogizes CFV's actions to those of the intervenors in *Sable*. *See* Memo. in Support at 5–7, ECF No. 113; Obj. at 4–5, 14, ECF No. 126.

*Sable* involved a written policy by telephone carriers to lobby law enforcement agents to prosecute Sable. *Sable*, 890 F.2d at 187. The "substantial cooperation" prong of the joint participation test from Sable requires that the private party invoke the aid of state officials to take advantage of state-created procedures. *Sable*, 890 F.2d at 189. The Ninth Circuit held that the lobbying and petitioning of government officials to enforce a section of the California penal code satisfied the substantial cooperation requirement. *Id.*

CFV did not invoke the aid of state officials to take advantage of state-created procedures. CFV sought passage of Act 189. *See* Obj. at 5. CFV did not seek to have state officials aid CFV's lobbying activities. At most, CFV sought to persuade, through lobbying activities, legislators to pass Act 189. Treating citizens who seek passage of a law as jointly partic-

ipating with state actors would render every citizen advocating legislation a "joint participant." *Sable* does not go that far.

Furthermore, the Magistrate Judge noted that CommonWealth's heavy reliance on the joint participation theory appeared to be at odds with its strong opposition to CFV's motion to intervene, and its failure to name CFV as a defendant. *See* Order at 14 n. 9 ("It would seem that if Plaintiffs genuinely believed that CFV was a joint participant, subject to liability, they would have named CFV as a defendant."). This court agrees that CommonWealth's position that CFV was a "joint participant" with the State would be more credible had it named CFV as a defendant. Instead, Commonwealth fought to keep CFV out of this litigation. *See* ECF No. 37.

### 5. *Equity Favors Not Holding CFV Liable for Attorneys' Fees and Expenses.*

Fifth, CommonWealth argues that the equities favor awarding attorneys' fees to CommonWealth. CommonWealth says that an award of attorneys' fees would further a primary goal of the Attorney's Fees Awards Act and stimulate voluntary compliance with the law. The court is unpersuaded.

■ Equity actually demands that CFV, a nonprofit intervenor, not be liable for CommonWealth's attorneys' fees and expenses, given CommonWealth's voluntary decision to bargain away its ability to seek recovery of those amounts from the Governor. CommonWealth waived its right to seek recovery of these same fees and expenses from the only Defendant against which it filed this litigation.

A finding that CFV is liable for attorneys' fees and expenses could have the effect of stifling citizens' participation in the legislative process for fear that their support of legislation might later be used against them if the legislature passes an act that the judiciary subsequently deems unconstitutional. The court agrees with the Magistrate Judge's assessment that "It is disingenuous for Plaintiffs to suggest that assessing over $1.5 million in fees and expenses against CFV would not chill Plaintiffs' tenants' ability to petition the legislature or exercise their own constitutional rights." F & R at 1235 n. 3.

### B. *CommonWealth's Attorneys' Fees and Costs Are Excessive and Unreasonable.*

■ Even if CommonWealth did establish entitlement to fees and costs from CFV, it does not establish the reasonableness of the amounts sought. CommonWealth seeks $1,447,424.21 in fees and $65,525.55 in costs. After *de novo* review, the court adopts the F & R regarding the grossly excessive and disproportionate attorneys' fees. For example, CommonWealth asks for repayment of its senior legal assistant at a rate of $285 per hour. This court has recently found that $285 per hour is the prevailing rate in this community for attorneys with 20 to 30 years experience. *See Sound v. Koller,* Civil No. 09–00409 JMS–KSC, 2010 WL 1992198, *5 (D.Haw. March 5, 2010).

CommonWealth bases the amount of its fee request largely on its assertion that this case required attorneys with specialized expertise in constitutional law. This lawsuit, however, did not require specialized constitutional expertise. Any number of experienced local attorneys could have effectively litigated this case at rates far below those claimed by CommonWealth. *See* F & R at 1239.

## V. *CONCLUSION.*

The court adopts the F & R in its entirety. CFV is an "innocent intervenor" under *Zipes* and *Costco*. CFV has not been found liable for engaging in unlawful activity. Having reviewed *de novo* the Magis-

trate Judge's detailed and thorough F & R, the court adopts it in full.

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATION TO DENY PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES

KEVIN S.C. CHANG, United States Magistrate Judge.

Before the Court is Plaintiffs' Motion for Attorneys' Fees and Expenses ("Motion"), filed November 1, 2010. On November 12, 2010, Plaintiffs filed their Statement of Consultation ("SOC"). Intervenor–Defendant Citizens for Fair Valuation ("CFV") filed its Opposition on November 24, 2010. On December 8, 2010, Plaintiffs filed their Reply.

Pursuant to Rule 7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawaii ("Local Rules"), the Court finds this matter suitable for disposition without a hearing. After reviewing the parties' submissions, the Court FINDS and RECOMMENDS that the Motion be DENIED.

### BACKGROUND

As the parties and the Court are familiar with the history of this case, the Court limits the background to those facts bearing relevance to the instant Motion.

On September 29, 2009, CFV filed a motion to intervene.[1] On October 21, 2009, the Court issued an Order Granting CFV's Motion to Intervene.

On May 31, 2010, Chief Judge Susan Oki Mollway issued an Order Granting Plaintiffs' Motion for Summary Judgment, Denying Defendant Linda Lingle's Second Counter Motion for Summary Judgment, and Denying Intervenor–Defendant Citizens for Fair Valuation's Counter Motion for Summary Judgment 715 F.Supp.2d 1115 (D.Haw.2010) ("SJ Order"). On June 1, 2010, the Court entered Judgment in favor of Plaintiffs and against Defendant Lingle and CFV, pursuant to the SJ Order.

On June 3, 2010, Plaintiffs filed a Consent Motion to Extend Time for Filing Motion for an Award of Attorneys' Fees ("Consent Motion"), wherein Plaintiffs, with the support of Defendant and CFV, requested that the Court extend the time to file a motion for attorneys' fees and related expenses until fourteen days after the latter of 1) the expiration of time for defendants to file a notice of appeal without an appeal being noticed or 2) the issuance of a final mandate following any appeal with the time for further appeal, if any, having passed without an appeal having been taken. That same day, this Court issued an Order Extending Time for Filing Motion for an Award of Attorneys' Fees ("Extension Order"), which granted the foregoing request.

On June 30, 2010, Defendant Lingle filed a Notice of Appeal.

On September 29, 2010, Plaintiffs and Defendant Lingle reached a settlement agreement. As part of the agreement, Plaintiffs agreed not to seek attorneys' fees or costs incurred in this lawsuit from Defendant Lingle, the State, State entities, or other State agents, officers or employees. Mot., Ex. 1 at ¶ 11.

On October 18, 2010, the Ninth Circuit issued an Order dismissing the appeal with prejudice pursuant to a stipulation of the parties.

On November 1, 2010, Plaintiffs filed both a Motion for Attorneys' Fees and Expenses and a Bill of Costs. On Novem-

---

**1.** Plaintiffs vigorously opposed CFV's intervention on the basis that CFV lacked standing to intervene under Rule 24 of the Federal Rules of Civil Procedure.

ber 8, 2010, CFV filed an Objection to the Bill of Costs. On November 9, 2010, this Court issued a Findings and Recommendation Regarding Intervenor–Defendant Citizens for Fair Valuation's Objection to Plaintiffs HRPT Properties Trust, et al.'s Bill of Costs ("F & R"). Given Plaintiffs' subsequent withdrawal of their Bill of Costs on November 23, 2010, Chief Judge Mollway deemed the F & R moot. Doc. No. 120.

## DISCUSSION

By way of this Motion, Plaintiffs, Hawaii's largest industrial landowner,[2] seek $1,512,949.92 in attorneys' fees and expenses pursuant to 42 U.S.C. § 1988 against CFV, a nonprofit organization comprised of a number of Plaintiffs' lessees. Section 1988 provides, in pertinent part: "In any action or proceeding to enforce a provision of section[ ].1983 ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). To be considered a "prevailing party," a party must "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar v. Hobby,* 506 U.S. 103, 109, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); *LSO, Ltd. v. Stroh,* 205 F.3d 1146, 1160 (9th Cir.2000).

Prevailing plaintiffs "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Mendez v. County of San Ber-*

*nardino,* 540 F.3d 1109, 1124 (9th Cir. 2008) (quoting *Hensley,* 461 U.S. at 429, 103 S.Ct. 1933). Fee awards are the rule rather than the exception, and the Court's discretion to deny fees under § 1988 is very narrow. *Id.* at 1126 (citing *Herrington v. County of Sonoma,* 883 F.2d 739, 743 (9th Cir.1989)). This is because "Congress' intent in enacting § 1988 was to attract competent counsel to prosecute civil rights cases, where 'victims ordinarily cannot afford to purchase legal services at the rates set by the private market.'" *Id.* (quoting *City of Riverside v. Rivera,* 477 U.S. 561, 576, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (plurality opinion)).

CFV does not dispute Plaintiffs' prevailing party status. Instead, CFV challenges Plaintiffs' assertion that CFV is liable for fees, having acted jointly with the State, and having participated in the litigation as a non-innocent intervenor. CFV submits that fees and expenses should not be assessed against it because 1) it is an innocent intervenor and 2) it would be inequitable to allow Plaintiffs to recover fees and expenses from CFV after they bargained away their entitlement to recover fees and expenses from Defendant Linda Lingle.

Section "1988 fee awards should be made against losing intervenors ... 'only where the intervenors' action was frivolous, unreasonable, or without foundation.'" *Costco Wholesale Corp. v. Hoen,* 538 F.3d 1128, 1133 (9th Cir.2008) (quoting *Democratic Party of Wash. State v. Reed,* 388 F.3d 1281, 1288 (9th Cir.2004) (quoting *Indep. Fed'n of Flight Attendants v. Zipes,* 491 U.S. 754, 761, 109 S.Ct. 2732, 105

---

2. Jacy Youn, HRPT Properties Trust, A Massachusetts-based real estate investment trust becomes one of Hawaii's largest industrial landowners, Hawaii Business, http://www. hawaiibusiness.com/Hawaii–Business/August–2005/HRPT–Properties–Trust/(last visited Dec. 21, 2010) (" 'We've now got 18 million square feet of land in Hawaii, and that makes us one

of, if not the largest, industrial landowners in the state of Hawaii,' says Adam Portnoy, executive vice president of HRPT."); Janice L. Magin, Federal Judge Rules Law Targeting HRPT's Hawaii Leases is Unconstitutional, Pacific Business News, http://www. bizjournals.com/pacific/stories/2010/05/31/daily4.html (last visited Dec. 21, 2010).

L.Ed.2d 639 (1989))). For the reasons set forth below, the Court finds that CFV is not liable for attorneys' fees.

Plaintiffs argue that CFV is not an innocent intervenor because 1) its members would have played an essential role in the infliction of the constitutional injury; 2) it was indispensable in securing passage of the unconstitutional law; and 3) it conducted its extensive lobbying with blatant disregard for applicable legal requirements. Plaintiffs note that because their tenants include some of the largest and most successful businesses in the State of Hawaii, an award of fees will not chill said tenants' ability to petition the Legislature or to otherwise exercise their own constitutional rights.[3]

### A. CFV is an Innocent Intervenor

Critical to the Court's inquiry into whether CFV is an innocent intervenor is the definition of "innocent."[4] As noted by the Ninth Circuit in *Costco Wholesale Corp. v. Hoen*, 538 F.3d 1128 (9th Cir. 2008), the U.S. Supreme Court in *Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754, 109 S.Ct. 2732, 105 L.Ed.2d 639 (1989) "uses the term 'innocent' to refer simply to an intervenor who has not been found liable for engaging in unlawful activity." *Costco*, 538 F.3d at 1134; *Sable Commc'ns of Cal. Inc. v. Pac. Tel. & Tel. Co.*, 890 F.2d 184, 194 n. 20 (9th Cir.1989) (innocent intervenors are those

who have not been found to have violated another's civil rights). In other words, a prior finding of liability for engaging in unlawful activity is a prerequisite to establishing that an intervenor is not innocent. *Costco*, 538 F.3d at 1134 (Costco's argument "is at odds with *Zipes* because it suggests that an intervenor may be found blameworthy without any prior finding of liability for engagement in unlawful activity"). Plaintiffs have not and cannot point to a prior finding of liability against CFV for engaging in unlawful activity.[5] Thus, their contention that CFV is non-innocent fails.

#### 1. Future Infliction of Constitutional Injury by CFV's Members

Plaintiffs argue that CFV's members "*would have* played an essential role in the infliction of the constitutional injury," Mem. in Supp. of Mot. at 8 (emphasis added), not that CFV's members inflicted any constitutional injury upon Plaintiffs. Plaintiffs suggest that the fact that Act 189 empowered CFV to deprive Plaintiffs of their constitutional rights elevates CFV to the level of a joint participant in the unconstitutional action. This argument is without merit. First, as discussed above, there must have been a prior finding of liability against CFV for engagement in an unlawful activity. By raising the above argument, Plaintiffs essentially concede that CFV has not deprived them of any

---

**3.** This policy consideration provides no basis for awarding fees against CFV. It is disingenuous for Plaintiffs to suggest that assessing over $1.5 million in fees and expenses against CFV would not chill Plaintiffs' tenants' ability to petition the legislature or exercise their own constitutional rights. Indeed, if Plaintiffs' tenants faced potential exposure to a fee award in excess of $1.5 million each time they lobbied for legislation and then later defended the constitutionality of the legislation as an intervenor-defendant, their ability to petition the legislature could be significantly impacted.

**4.** While Plaintiffs accuse CFV of confusing the standards applied to an innocent intervenor with the definition of an innocent intervenor, it appears that Plaintiffs have disregarded and/or misapplied the definition of an innocent intervenor.

**5.** Plaintiffs assert a number of arguments, many of which are irrelevant, and none of which squarely address the lack of a finding of liability against CFV for unlawful activity.

right.[6] Insofar as CFV has never been found liable for engagement in an unlawful activity, and certainly not for the purported "empowerment" conferred upon it by Act 189, it is innocent for the purposes of determining fee liability. *Costco*, 538 F.3d at 1134 (finding the intervenor innocent for the purpose of determining fee liability under § 1988(b) because it was not found liable under § 1983 for adhering to the unconstitutional state law).

Second, that CFV would have benefitted from Act 189 (or been "empowered" by it, as claimed by Plaintiffs) in no way renders CFV a joint participant liable for attorneys' fees. According to Plaintiffs, it is "settled in the Ninth Circuit that a plaintiff's entitlement to attorney's fees in successful constitutional litigation includes an award of attorney's fees against intervenors who 'acted jointly with ... state officials under a procedural scheme created by the state.'"[7] Mem. in Supp. of Mot. at 5 (quoting *Sable Commc'ns*, 890 F.2d at 189[8]). Plaintiffs incorrectly argue that

this case is controlled by *Sable Communications of California Inc. v. Pacific Telephone and Telegraph Co. Sable Communications* is distinguishable and Plaintiffs' reliance on it is misplaced. General Telephone, the intervenor in *Sable Communications*, was found to have violated one of the plaintiff's first amendment rights in the same manner as one of the defendants. *Sable Commc'ns*, 890 F.2d at 194 n. 20. Significantly, one of the legal issues presented in *Sable Communications* was whether the plaintiff established that one of the defendants, a private actor, "acted jointly with, or under compulsion from, state officials under a procedural scheme created by the state." *Id.* at 189. Whether or not General Telephone acted as a joint participant was not before the Ninth Circuit, as General Telephone's appeal was limited to the grant of attorneys' fees. *Id.* at 187.

Here, the issue of joint participation was not presented to Chief Judge Mollway, nor adjudicated, and is therefore irrelevant to ascertaining the propriety of assessing attorneys' fees against CFV.[9] Neither did

---

**6.** Plaintiffs cite two cases from this district for the proposition that a plaintiff is entitled to recover its attorneys' fees if it sues for a declaratory judgment or an injunction and prevents the occurrence of a constitutional violation. *Runyon v. Fasi*, 762 F.Supp. 280 (D.Haw.1991); *Yuclan Int'l v. Arre*, 504 F.Supp. 1008 (D.Haw.1980). Neither involved the propriety of awarding fees against an intervenor, a fact that Plaintiffs have conveniently chosen to ignore. The limited issue before this Court is whether CFV, as an ***intervenor***, is liable for fees.

**7.** Plaintiffs cite general principles of law dealing with awards of attorneys' fees in § 1988 cases, despite the inapplicability of these principles to awarding fees in the context of ***intervenors***. For example, Plaintiffs cite *Council for Periodical Distributors Associations v. Evans*, 827 F.2d 1483 (11th Cir.1987) for the proposition that "[i]n cases where two or more defendants actively participated in a constitutional violation, it will frequently be appropriate to hold all defendants jointly and severally liable for the attorney's fees." *Id.* at

1487. However, *Evans* did not involve intervenors; it addressed the liability of named defendants with respect to attorneys' fees, and whether the apportionment of fees was proper based on a defendant's proportionate responsibility for the wrong. *Id.*

**8.** In their memorandum, Plaintiffs incorrectly cite page 194. The quoted passage is on page 189.

**9.** CFV submits that because Plaintiffs did not consider CFV a joint participant, having failed to name CFV as a party and in fact, having fought to keep CFV out of the litigation, they cannot now argue that CFV was a joint participation for the purposes of assessing attorneys' fees. Opp'n at 6. Plaintiffs characterize this argument as a red herring and counter that there is no requirement that an intervenor must be named as a defendant to be deemed a joint participant. Reply at 5 n. 2. While not suggesting that naming a party as a defendant is a prerequisite to a finding of joint participation, the Court notes that Plaintiffs' current heavy reliance on the joint par-

Chief Judge Mollway find that CFV violated Plaintiffs' constitutional rights or acted unlawfully. Plaintiffs are attempting to use this Motion as a means of introducing new legal theories, favorable decisions on which might provide a basis for fees. It is improper for them to do so, and this Court's decision with respect to Plaintiffs' entitlement to fees rests on the findings and conclusions in the SJ Order.[10] Because Chief Judge Mollway did not deem CFV to be a joint participant, and has not found that CFV violated Plaintiffs' constitutional rights, CFV is an innocent intervenor and fees can only be assessed against it if the intervention was frivolous, unreasonable, or without foundation.

### 2. CFV's Role in the Passage of Act 189

As a second basis to support its contention that CFV is not an innocent intervenor, Plaintiffs assert that CFV initiated the legislation, lobbied, and testified extensively on its behalf. A nearly identical argument was rejected by the *Costco* court. *Costco*, 538 F.3d at 1134. Costco contended that the intervenor was not innocent because its lobbying led the Washington legislature to pass the unconstitutional law. *Id.* The court held that this argument was at odds with *Zipes* because an intervenor could be found blameworthy even in the absence of a prior finding of

liability for engagement in an unlawful activity. *Id.* Plaintiffs have disregarded this holding, relying instead on the secondary finding by the court that there was no evidence that the intervenor lobbied for the law. There is no dispute here that CFV sponsored Act 189 and lobbied for its passage. However, that alone does not strip CFV of innocent intervenor status. There must be a prior finding of liability against CFV for engagement in an unlawful activity, i.e., that its role in securing passage of Act 189 was unlawful. Plaintiffs have cited no such finding, and no such finding exists.[11]

### 3. CFV's Lobbying

Finally, Plaintiffs proffer that CFV conducted its lobbying with blatant disregard for applicable legal requirements. The Court questions Plaintiffs' attempt to inject into this action a separate matter presently before the Hawaii State Ethics Commission, based on violations of state law. However,. even considering this argument, the Court is unpersuaded. As with the previous two arguments, Plaintiffs are unable to point to a *prior* finding of liability for unlawful activity. Plaintiffs filed their complaint against CFV and Michael Steiner, CFV's executive director, for violations of Chapter 97, Hawaii Revised Statutes following the entry of judgment in

ticipation theory appears to be at odds with their strong opposition of CFV's motion to intervene, and their failure to name CFV as a defendant. It would seem that if Plaintiffs genuinely believed that CFV was a joint participant, subject to liability, they would have named CFV as a defendant.

10. The Court rejects Plaintiffs' expansion of the SJ Order and misrepresentation of Chief Judge Mollway's holdings. Plaintiffs represent that Chief Judge Mollway held and/or found as follows: 1) CFV fully participated in the constitutional violation, Reply at 16; 2) the enactment of the unconstitutional legislation improperly empowered CFV's members

with state authority in negotiations with Plaintiffs for rent resets, *id.* at 5; and 3) under the constitutionally flawed legislation sponsored by CFV, CFV's members would play an essential role in using state authority in rent reset proceedings to unconstitutionally change the terms of Plaintiffs' historic lease contracts. *Id.* at 4. A careful review of the SJ Order reveals that Chief Judge Mollway made no such rulings.

11. Chief Judge Mollway noted that CFV played an essential role in advocating for Act 189's passage, SJ Order, 715 F.Supp.2d at 1135 n. 4. However, she did not find that this advocacy was unlawful.

this case. Reply, Decl. of Bruce D. Voss ("Voss Decl."), Ex. 1. A decision has yet to be made on the merits of the allegations. Plaintiffs' conviction in their allegations is not tantamount to finding of liability. Thus, there is no prior finding of liability and CFV is an innocent intervenor.

Plaintiffs propose that this Court may defer ruling on this Motion until the Ethics Commission rules on their complaint, or hold a factual hearing to determine whether CFV violated applicable ethics laws. The Court declines to do either. Given the *Costco* court's emphasis on the existence of a *prior* finding of liability, the Court will not defer its ruling until the Ethics Commission's decision is issued. Plaintiffs, hopeful that they will succeed in their ethics complaint, ask the Court to wait for a ruling that has the potential to be favorable, and which they would then rely upon for the argument that CFV is not an innocent intervenor. To allow Plaintiffs to wait for a potential basis to support their currently presented fee request is inappropriate. As matters stand, this Motion is being addressed well past the time in which an attorneys' fees motion would ordinarily be adjudicated, given the extension of time to file the Motion. In fact, it is quite possible that had this Motion been filed within 14 days of the entry of judgment, the Court would have issued its findings and recommendation before the ethics complaint was ever filed.

Neither will the Court hold a factual hearing to determine whether CFV violated applicable ethics laws. Whether or not CFV violated ethics laws is not properly before this Court, and the Court will not make any determinations concerning Plaintiffs' ethics allegations against CFV.

In sum, CFV is an innocent intervenor for the purpose of determining fee liability under § 1988. Consequently, the Court will now consider whether CFV's actions were frivolous, unreasonable, or without foundation.

B. *CFV's Actions were not Frivolous, Unreasonable, or Without Foundation*

To determine whether CFV is liable for fees, the Court must ascertain whether CFV's manner of litigating was frivolous, unreasonable, or without foundation. *Costco*, 538 F.3d at 1134–35; *Reed*, 388 F.3d at 1288 (considering the intervenor's conduct during litigation in determining whether its position was frivolous, unreasonable, or without foundation). In the present case, the Court finds that CFV's defense of Act 189 was not frivolous, unreasonable, or without foundation. The mere fact that Chief Judge Mollway rejected CFV's position and CFV unsuccessfully defended against Plaintiffs' motion for summary judgment and did not prevail on its counter-motion for summary judgment does not make CFV's defense of Act 189 frivolous, unreasonable, or without foundation. *Reed*, 388 F.3d at 1288; *cf. Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 421–22, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) (discussing "frivolous, unreasonable, or without foundation" standard in the context of awarding fees in favor of a prevailing defendant and noting that the Supreme Court has cautioned that in applying this standard, "it is important that the district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation"). Significantly, Chief Judge Mollway made no finding that CFV's defense of this case was frivolous, unreasonable, or without foundation. Absent such a finding by Chief Judge Mollway, particularly in view of the fact that she adjudicated the merits of the action after full briefing, this Court

finds that CFV is not liable for fees under § 1988(b) and declines to recommend an award of attorneys' fees to Plaintiffs.[12]

## C. Plaintiffs' Fee Request is Grossly Excessive and Unreasonable

Even assuming, *arguendo*, that the Court found that Plaintiffs were entitled to an award of attorneys' fees and expenses against CFV, the requested amount would be subject to substantial reductions. For a case that was litigated for a period of approximately 9 months, and in which the parties litigated 7 motions, Plaintiffs claim to have incurred $1,447,424.21 in fees and $65,525.55 in expenses. The following discussion highlights the more obvious deficiencies that would result in reductions, but is by no means exhaustive.

### 1. Reductions to Hourly Rates

First, the grossly excessive and highly unreasonable hourly rates requested by Plaintiffs' mainland counsel would be reduced to match local rates, as the rates awarded by the Court are those of the forum district, not the district in which the mainland law firm is located.[13] *See Mendez*, 540 F.3d at 1129 ("[T]he court must consider what constitutes a reasonable hourly rate for work performed in the relevant community by attorneys of similar skill, experience and reputation."); *Webb v. Ada County*, 285 F.3d 829, 840 & n. 6 (9th Cir.2002) (The reasonable hourly rate should reflect the prevailing market rates in the community); *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir.1992), *as*

*amended on denial of reh'g*, (1993) (noting that the rate awarded should reflect "the rates of attorneys practicing in the forum district"). There is no basis for deviating from this rule. Though raising constitutional issues, this case was relatively straightforward, and did not require the involvement of a mainland law firm. It is only in cases requiring the specialized knowledge of a mainland attorney or law firm that this Court might consider awarding an hourly rate commensurate with the rates in the mainland attorney/law firm's district/community. Although Plaintiffs tout their mainland counsel as "specialist[s] in complex constitutional litigation," Reply at 12–13, there are a number of very experienced and highly skilled local attorneys who could have effectively litigated this case. Plaintiffs are certainly entitled to counsel of their choice, and have the right to retain mainland counsel. However, in this case, they are not entitled to reimbursement of mainland counsel's fees at mainland rates.

Plaintiffs' local counsel's hourly rates would also be reduced to rates commensurate with the prevailing rates awarded by the Court for attorneys and paralegals with similar experience and reputation.

### 2. Time Billed by Attorneys and Paralegals are Recoverable, but not that of Other "Professionals"

Second, only the reasonable hours incurred by attorneys and paralegals would be compensable. This Court does not

---

**12.** It is unnecessary to discuss the parties' equity arguments because Plaintiffs are not entitled to attorneys' fees as a matter of law.

**13.** To demonstrate the excessiveness of the requested hourly rates, the Court notes that Plaintiffs request an hourly rate of $400.40 for Frank Correll, who graduated from law school in 2008. Mot., Decl. of Clifford Sloan ("Sloan Decl.") at ¶ 16, Ex. A. In this district, based on previous awards, the Court would

likely find reasonable an hourly rate ranging from $130.00–$160.00 for an attorney who has been licensed to practice since 2008. Mr. Sloan's hourly rate ranges from $846.30–$930.00, and he has been licensed to practice law since 1986. *Id.*, Sloan Decl. at ¶ 5, Ex. A. In this district, the Court would likely find reasonable an hourly rate ranging from $300.00–$350.00 for an attorney with his experience.

compensate for the time expended by other professionals such as librarians, litigation specialists, litigation coordinators, or legal assistants, whose requested hourly rates exceed even the rates typically awarded to experienced attorneys in Hawaii.[14] Plaintiffs erroneously argue that the time expended by their "professionals" should be awarded because it is customary in the Washington, D.C. legal community for such time to be billed to clients. It is this district's practices that are relevant, not those that are customary in Washington, D.C. Therefore, the billings for all professionals other than paralegals and attorneys would be non-compensable.

### 3. Reductions for Block-billed Time Entries

Plaintiffs contend that block billing was appropriate and that no reductions based on this billing practice are warranted. The Court is not persuaded. This Court regularly reduces fee requests that include block-billed entries, and the Court has the discretion to do so. *Mendez*, 540 F.3d at 1129 (It is fully appropriate for the Court to reduce hours billed in the block format.). "The term 'block billing' refers to the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 n. 9 (10th Cir.1998) (citations and quotation marks omitted). Block billing entries generally fail to specify a breakdown of the time spent on each task.

District courts have the authority to reduce hours that are billed in block format because such a billing style makes it difficult for courts to ascertain how much time

counsel expended on specified tasks. *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir.2007). *See also id.* (citing *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C.Cir.2004) (reducing requested hours because counsel's practice of block billing "lump[ed] together multiple tasks, making it impossible to evaluate their reasonableness")); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (holding that applicant should "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims").

Here, as noted by CFV, a significant number of time entries are billed in the block format. Plaintiffs' counsel's use of block billing makes it difficult, if not impossible, for the Court to ascertain the reasonableness of the hours expended with respect to specific time entries. Accordingly, it would be necessary to impose an across-the-board reduction of 15–25% with respect to the entries that are in the "block billing" format.

### 4. Reductions for Excessive/Duplicate Billings

Plaintiffs seek to recover fees for tasks, travel, and other activities for which multiple attorneys billed. Though the Court will not list specific instances here, the duplicative time spent by multiple attorneys is non-compensable. The general rule is that two professionals cannot bill for attending the same meeting. *Brandon E. v. Dep't of Educ., State of Hawaii*, No. CV 07–00536 ACK–LEK, 2008 WL 4602533, at *3 (D.Haw. Oct. 16, 2008). Thus, when a party's counsel meet with one other, the Court deducts the duplicative time billed. *Id.; In re Mullins*, 84

**14.** For example, Plaintiffs request an hourly rate of $248.17 for Ms. Belofsky, a litigation coordinator with a college degree and who has undergone Skadden Arps' legal assistant

training program. Mot., Sloan Decl. at ¶ 22, Ex. A. An *attorney* with 20 + years experience would be awarded such an hourly fee in this district.

F.3d 459, 467 (D.C.Cir.1996) (deducting fees incurred by the two lowest-billing attorneys where three attorneys billed time spent attending a meeting together). Similarly, the attendance of hearings, conferences, and depositions by multiple attorneys is duplicative with respect to the attorney(s) who merely attend, and do not participate. As a result, the Court would deduct the hours billed by attorneys who merely attended the foregoing. *See Sheffer v. Experian Info. Solutions, Inc.*, 290 F.Supp.2d 538, 546 (E.D.Pa.2003) (disallowing fees for mere attendance at deposition).

To the extent multiple attorneys or paralegals worked on any given task, the Court would carefully scrutinize the entries and deduct any duplicative and excessive time that resulted from the involvement of multiple individuals.

### 5. *Reductions for Ministerial/Clerical Work*

A number of time entries reflect billing for clerical/ministerial work and are non-compensable. "[C]lerical or ministerial costs are part of an attorney's overhead and are reflected in the charged hourly rate." *Jeremiah B. v. Dep't of Educ.*, Civil No. 09–00262 DAE–LEK, 2010 WL 346454, at *5 (D.Haw. Jan. 29, 2010) (citing *Sheffer*, 290 F.Supp.2d at 549). Tasks such as reviewing Court-generated notices, notifying clients of court hearings, filing documents with the Court, communication with court staff, scheduling, and corresponding regarding deadlines, are clerical and not compensable. *Id.* (finding that entries for communications about, and internal office management of, hearing dates and due dates are clerical in nature); *Nicholas M. ex rel. Laura M. v. Dep't of Educ., Hawaii*, Civ. No. 09–00162 HG–LEK, 2010 WL 234862, at *5 (D.Haw. Jan. 21, 2010) (finding that tasks such as informing a client that a document has been filed or informing client of a hearing date

is clerical or ministerial); *Hawaii Carpenters Trust Funds v. Cosier Const., Inc.*, Civil No. CV 08–00442 SOM–LEK, 2009 WL 291188, at *3 (D.Haw. Feb. 03, 2009) (finding that review of district court filing notices are clerical and non-compensable); *Bandalan v. Castle & Cooke Resorts, LLC*, Civil No. 07–00591 DAE–LEK, 2009 WL 1955328, at *5 (D.Haw. June 30, 2009) (clerical tasks include reviewing notices of the date and time for motions hearings and notices of filing deadlines); *Black v. City, County of Honolulu*, 2010 WL 653026, at *12 (D.Haw. Feb. 22, 2010) (deeming clerical tasks such as traveling to court to check for form and filing complaint); *Young v. Geico Indem. Co.*, Civ. No. 08–00171 JMS/KSC, 2009 WL 3049640, at *8 (D.Haw. Sept. 23, 2009) (communications with the court are clerical and not compensable). Most, if not all, of these tasks were completed by "professionals." Given the Court's earlier determination that none of the hours expended by "professionals" other than paralegals or attorneys are compensable, further reductions for clerical tasks billed by these individuals would be unnecessary.

In sum, if the Court were calculating a fee award, it would, at minimum, impose the foregoing reductions.

### D. *Requested Expenses are Excessive*

Plaintiffs further seek to recover $65,525.55 in expenses. CFV challenges Plaintiffs' entitlement to the same. Even if CFV were found liable for Plaintiffs' fees and expenses, Plaintiffs' request for expenses would be subject to reductions.

#### 1. *Electronic Research*

In awarding non-taxable costs, the Court permits reimbursement for electronic research costs. However, given Plaintiffs' failure to submit copies of invoices and receipts to support their request, even

after CFV pointed out this deficiency, the Court would recommend that the district court deny the request. Local Rule 54.3(d)(3).

## 2. *Travel Expenses*

Although travel expenses may be compensable under § 1988, Plaintiffs' request for reimbursement of first-class airfare and luxury hotel accommodations is unreasonable. Plaintiffs offer no sufficient explanation for why first-class airfare and luxury hotel accommodations were necessary and/or reasonable. With respect to the airfare, Plaintiffs contend that the class of airfare was necessary and reasonable for lengthy cross country trips that exceeded 9 hours. Absent proof of some illness, disability, or other condition, discomfort alone is an insufficient basis for the exorbitant request. While first-class airfare may be an expense Plaintiffs agreed to bear, this Court will not find, as a matter of law, that first-class airfare was reasonable or necessary, nor that it would be recoverable from CFV if CFV were liable for expenses under § 1988. The same is true of Plaintiffs' counsel's luxury hotel expenses. *Topp, Inc. v. Uniden America Corp.*, No. 05–21698–CIV, 2007 WL 2155604, *4 (S.D.Fla. Jul. 25, 2007) ("The undersigned agrees that Topp should not have to pay for first class airfare for attorney Smith. Therefore, the undersigned awards Uniden $500.00 for attorney Smith's round trip coach airfare between Atlanta and Phoenix, and disallows the $1,118.85 first class premium as representing merely the convenience of counsel."); *cf. Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship*, 730 F.Supp.2d 513, 530–31 (E.D.Va.2010) (refuting necessity and reasonableness of first class plane tickets and stays at Hyatt for witnesses when cheaper more reasonable options available, and deducting 50% of the requested amount).

The Court additionally notes that the reasonableness and/or necessity of mainland counsel's travel to Honolulu, and local counsel's travel to Boston is questionable and appears to be duplicative and/or excessive. Local counsel could have alone appeared, and did in fact appear, on behalf of Plaintiffs at the summary judgment hearings. Likewise, because mainland counsel traveled to Boston, it was unnecessary for local counsel to do so. Again, it is one thing to charge a client for these expenses and another to seek recovery from the losing party, particularly where, as here, the request is unreasonable and excessive.

For these reasons, even if CFV were liable for Plaintiffs' expenses, the Court would disallow a significant portion of the requested fees and expenses.

## CONCLUSION

In accordance with the foregoing, the Court HEREBY FINDS AND RECOMMENDS that Plaintiffs' Motion for Attorneys' Fees and Expenses, filed November 1, 2010, be DENIED. The Court finds that CFV is not liable for attorneys' fees and expenses under § 1988(b) because it is an innocent intervenor and its manner of litigating this action was not frivolous, unreasonable, or without foundation.

IT IS SO FOUND AND RECOMMENDED.